UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

                Plaintiff,                    **Memorandum and Order**

  -against-                                02-CV-4800 (JMA)

UNITED STATES CURRENCY IN THE
SUM OF SIX HUNDRED SIXTY
THOUSAND, TWO HUNDRED DOLLARS
($660,200.00), MORE OR LESS,

                Defendant.
------------------------------------------------------------X

APPEARANCES:

Steven L. Kessler
Law Offices of Steven L. Kessler
122 East 42nd Street, Suite 1350
New York, New York 10165
*Attorney for Claimant Samy Khalil*

Louis M. Freeman
Freeman, Nooter & Ginsberg
30 Vesey Street, Suite 100
New York, New York 10007
*Attorney for Claimant Abdel Soliman*

Roslynn R. Mauskopf
United States Attorney
One Pierrepont Plaza
Brooklyn, New York 11201
        *By:*    Douglas A. Leff
                 *Assistant United States Attorney*

**AZRACK, United States Magistrate Judge**:

      On April 6, 2006, I entered an Order[1] granting Samy Khalil ("Claimant") and Abdel

Soliman's motion to enforce a settlement agreement. See United States v. United States Currency

---

[1] By stipulation, the parties consented to have me preside over this case for all purposes, including entry of judgment (Dkt No. 52: Consent to Jurisdiction by U.S. Mag. J. (11/30/05)).

in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars ($660,200.00), More or Less, 423 F. Supp. 2d 14 (E.D.N.Y. 2006) (hereinafter "Currency I"). At that time, I also granted Khalil and Soliman's motion for costs and attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), because the government was not substantially justified in its refusal to execute the Stipulation, honor the oral settlement and the written agreement, or comply with the terms of the settlement. See Id. at 36-38. On a motion for reconsideration, I clarified that only Khalil could recover costs and attorneys' fees because Soliman, having pled guilty to conspiracy to defraud the United States, was ineligible for reimbursement under the Civil Asset Forfeiture Reform Act of 2000. See United States v. United States Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars ($660,200.00), More or Less, 429 F. Supp. 2d 577, 580-81 (E.D.N.Y. 2006) (hereinafter "Currency II"). Familiarity with this Court's April 6, 2006 and May 16, 2006 Memoranda and Orders is presumed.

Claimant Khalil now moves for reimbursement of his costs and fees pursuant to my decision in Currency I. Claimant contends that the hourly rate for his attorneys' fees should not be set by the EAJA cap of $125/hour but, rather, at the reasonable rate for a forfeiture attorney. For the reasons stated below, I will not deviate from the EAJA cap other than to account for an increase in the cost of living. Thus, claimant is awarded $54,617.03 in fees, pursuant to the EAJA rate based on a Consumer Price Index adjustment, and $156.93 in costs for a total award of $54,773.96.

**DISCUSSION**

A.  **Attorneys' Fees and Costs Awarded under the EAJA**

The EAJA provides in pertinent part that:

> [e]xcept as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a) incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Under this section of the EAJA, the prevailing party is entitled to attorneys' fees of $125.00 per hour. See Kerin v. United States Postal Serv., 218 F.3d 185, 189 (2d Cir. 2000) (rate applies to all cases commenced on or after March 29, 1996). The EAJA allows for an hourly rate of more than $125.00 if the "court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A); see also Wells v. Bowen, 855 F.2d 37, 43 (2d Cir. 1988) ("[I]t remains clear that the EAJA's [ ] per hour rate can be increased to reflect a demonstrable increase in the cost of living since the date of the statute's effectiveness.").

Once the court determines that the prevailing party has met the threshold for an award of fees and costs under the EAJA, it must determine what fee is reasonable. See INS v. Jean, 496 U.S. 154, 161 (1990) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). Claimant moves for an increase of the EAJA cap either for cost of living pursuant to the Consumer Price Index or, in the alternative, for the "special factor" that there are a limited number of qualified attorneys able or willing to take on substantial civil forfeiture matters. I grant claimant's motion for an increase in fees based on cost of living but deny the motion for an increase based on the special factor analysis.

3

### 1. Upward Adjustment for Cost of Living

In Harris v. Sullivan, the Second Circuit established that the cost of living increase allowed under the EAJA is properly measured by the Consumer Price Index ("CPI"). 968 F.2d 263, 265 (2d Cir. 1992). The court must apply a different cost of living adjustment for each year in which hours were billed, rather than applying a single adjustment to the total hours billed. See Kerin, 218 F.3d at 194 (citing Masonry Masters, Inc. v. Nelson, 105 F.3d 708, 711-13 (D.C. Cir. 1997) (holding that cost of living adjustment should be made using a different hourly cap for each year in question)). Claimant seeks reimbursement of attorneys' fees for hours billed in both 2005 and 2006. Claimant submitted CPI statistics based on the Northeast urban New York-Northern New Jersey-Long Island, NY-NJ-CT-PA region. See U.S. Dept. of Labor, Bureau of Labor Statistics, http://data.bls.gov/PDQ/servlet/SurveyOutputServlet (last visited June 16, 2006). The hourly rate for 2005, based on the CPI, is adjusted by 27.4% [2], resulting in a rate of $159.25 per hour for attorneys' fees billed in 2005. The hourly rate for 2006 is adjusted by 30.8%[3], resulting in a rate of $163.50 per hour for attorneys' fees billed in 2006. This upward adjustment, because it is made

---

[2] The 27.4% is based on the following calculation: (Apr.-Dec. 1996: 2.8% Annual CPI increase) + (1997: 2.3% Annual CPI increase) + (1998: 1.6% Annual CPI increase) + (1999: 2.0% Annual CPI increase) + (2000: 3.1% Annual CPI increase) + (2001: 2.5% Annual CPI increase) + (2002: 2.6% Annual CPI increase) + (2003: 3.1% Annual CPI increase) + (2004: 3.5% Annual CPI increase) + (2005: 3.9% Annual CPI increase). See U.S. Dept. of Labor, Bureau of Labor Statistics, http://data.bls.gov/PDQ/servlet/SurveyOutputServlet (last visited June 16, 2006).

[3] The 30.8% is based on the following calculation: (Apr.-Dec. 1996: 2.8% Annual CPI increase) + (1997: 2.3% Annual CPI increase) + (1998: 1.6% Annual CPI increase) + (1999: 2.0% Annual CPI increase) + (2000: 3.1% Annual CPI increase) + (2001: 2.5% Annual CPI increase) + (2002: 2.6% Annual CPI increase) + (2003: 3.1% Annual CPI increase) + (2004: 3.5% Annual CPI increase) + (2005: 3.9% Annual CPI increase) + (Jan.-Apr. 2006: 3.4% Annual CPI increase). See U.S. Dept. of Labor, Bureau of Labor Statistics, http://data.bls.gov/PDQ/servlet/SurveyOutputServlet (last visited June 16, 2006).

based on a cost of living increase, applies to all counsel. See Cruz v. Apfel, 48 F. Supp. 2d 226, 230 (E.D.N.Y. 1999).

### 2. No "Special Factor" Exists

While claimant's attorneys were exceptionally competent and the legal memoranda submitted concise, articulate, and well-argued, an attorney's skill, no matter how extraordinary, is not a consideration under the EAJA special factors cap increase. In Pierce v. Underwood, the Supreme Court determined that superior legal skill was not an EAJA "special factor" intended by Congress. 487 U.S. 552, 571-72 (1988). "If 'the limited availability of qualified attorneys for the proceedings involved' meant merely that lawyers skilled and experienced enough to try the case are in short supply, it would effectively eliminate the [$125.00] cap . . . ." Id. at 571. The Court held that the special factor "must refer to attorneys qualified for the proceedings in some specialized sense, rather than just in their general legal competence." Id. at 572 (internal quotation marks omitted). Examples of "some specialized sense" were "an identifiable practice speciality such as patent law, or knowledge of a foreign law or language." Id.

The legal issues presented in this matter were complex and the research and analysis required substantial. However, the court is not permitted to consider any of those factors in determining whether it should exceed the EAJA cap. A court may not base an adjustment upon "the novelty and difficulty of [the] issues, the undesirability of the case, the work and ability of counsel, [or] the results obtained . . . ." Id. at 573 (internal quotation marks omitted).

Claimant maintains that forfeiture law has been deemed an identifiable practice speciality in the Pierce progeny and, as such, should remove the EAJA cap from this fee determination. In the instant case, this argument is not persuasive for two reasons. First, forfeiture law has never been a

5

definitive speciality and does not automatically warrant a departure from the EAJA cap, as the circuits have not uniformly deemed it so and the Second Circuit, in particular, has never qualified it as such. However, regardless of forfeiture law's ambiguous status as a speciality prior to 2000, if these fees were awarded under the auspices of a forfeiture matter the Civil Asset Forfeiture Reform Act ("CAFRA") would control, not the EAJA. Under CAFRA, claimant would be denied fees because he did not "substantially prevail" under CAFRA's definition, and the subsequent legal application, of the term. Second, CAFRA is inapplicable because the legal representation required here was not specific to forfeiture law, thereby removing it from CAFRA's purview. Rather, the motion on which claimant prevailed involved principles of contract law, such that claimant's fees and costs are controlled by the EAJA.

        a.        Forfeiture Law Under the EAJA and CAFRA

The American Law Reports identified seven practice specialities that may be used as a basis for enhancing the EAJA cap: admiralty, agricultural law, environmental law, forfeiture law, government contracts law, patent law, and bankruptcy law. See 119 A.L.R. Fed. 1, at II [B](1) § 7(a)-(g) (2006). However, the pre-CAFRA case law did not uniformly establish that forfeiture law was a "special factor" that automatically justified an enhancement; rather, the few cases decided on this issue resulted in conflicting outcomes, such that even courts reaching the same outcome did so with radically varying rationales. See, e.g., United States v. Real Prop. Known As 22249 Dolorosa Street, 190 F.3d 977, 984 (9th Cir. 1999) (EAJA cap increase denied in forfeiture case because, "even assuming that expertise in defending civil forfeiture actions qualifies as a practice speciality requiring distinctive knowledge and skills . . .", those skills must be needed in the litigation and not available elsewhere at the statutory rate); United States v. Eleven Vehicles, 937 F. Supp. 1143, 1155

(E.D.Pa. 1996) (court denied increase of EAJA cap for a "special factor" in forfeiture matter because attorney acknowledged that he "had no knowledge of or experience in civil in rem forfeiture law until . . . he began work on [the] case"), reconsideration denied by, 966 F. Supp. 361, 366 (E.D.Pa. 1997) (instant forfeiture action did not require "special qualifications" and thus there was no special factor), opinion supplemented on other grounds, 36 F. Supp. 2d 237 (E.D.Pa 1999), supplemental opinion vacated, 200 F.3d 203 (3d Cir. 2000); United States v. Certain Real Prop. Located at 2323 Charms Rd., Milford Twp., 728 F. Supp. 1326, 1330 (E.D. Mich. 1990) (holding that forfeiture is an "identifiable practice specialty, available only at rates in excess of the [EAJA] cap" (citing Caplin & Drysdale v. United States, 491 U.S. 617 (1989))).

The confusion regarding whether attorneys' fees in forfeiture matters were eligible for lodestar[4] treatment, resulting in an fee award based on an hourly rate in excess of the EAJA cap, was resolved in 2000 with the passage of CAFRA. See 28 U.S.C. § 2465(b)(1)-(2). The statute provides in pertinent part that "in any civil proceeding to forfeit property under any provision of Federal law in which the claimant substantially prevails, the United States shall be liable for -- [ ] reasonable attorney fees and other litigation costs reasonably incurred by the claimant . . . ." Id. § 2465(b)(1)(A). CAFRA clarified that in circumstances where claimants were eligible for attorneys' fees and costs, the EAJA cap no longer applied, yielding to the lodestar analysis instead. See United States v. $60,201.00 U.S. Currency, 291 F. Supp. 2d 1126, 1129-30 (C.D.Cal. 2003)

---

[4] Under the "lodestar" method, attorneys' fees are determined by taking "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433; see also Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058 (2d Cir. 1989), cert. denied, 496 U.S. 905 (1990). Reasonable hourly rates are determined by reference to the "prevailing [marketplace rates] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Cruz v. Local Union No. 3, 34 F.3d 1148, 1159 (2d Cir. 1994) (citation omitted).

("[F]ees [under CAFRA] are not subject to a statutory hourly limit, in contrast with fee awards under the EAJA." (citing David B. Smith, Prosecution and Defense of Forfeiture Cases, ¶ 10.8 (Dec. 2002) (emphasis omitted))). CAFRA replaced the EAJA on fee determinations for all cases commenced post-CAFRA. See United States v. All Funds on Deposit in Dime Savings Bank of Williamsburg Account No. 58-400738-1, 255 F. Supp. 2d 56, 61-62 (E.D.N.Y. 2003); but see In re Application of Gerard Mgndichian, 312 F. Supp. 2d 1250, 1259 (C.D. Cal. 2003) (CAFRA replaced the EAJA on fee determinations for all cases where the seizure occurred on or after August 23, 2000). Regardless of which event is used as a marker, CAFRA would control a fee determination in this case because the seizure occurred on April 30, 2002 (Dkt. No. 1: Compl. (09/03/02) ¶11) and the case was commenced on August 30, 2002 (Id.).

If CAFRA awards reasonable attorneys' fees under the lodestar method, the question begs: why, then, did claimant engage in an intricate dance of dodging CAFRA, while embracing the EAJA, offering no definitive case law in this circuit, and weak case law from another, in his bid to assert forfeiture law as a special factor? The answer appears clear. Claimant knew that there was no authority to support a settlement as "substantially prevailing" in a "civil proceeding to forfeit property" under CAFRA. Indeed, my research did not yield a single case in which the claimants were awarded attorneys' fees under CAFRA for settling a forfeiture matter. See, e.g., United States v. $293,316 in United States Currency, More or Less, No. 03-CV-0278, 2005 WL 2476270 (E.D.N.Y. Oct. 7, 2005) (claimants deemed "substantially prevailing parties" after civil forfeiture proceeding resulted in the return of 50% of the seized currency, but fees and costs denied on other grounds); United States v. 4,432 Mastercases of Cigarettes, 322 F. Supp. 2d 1075 (C.D.Cal. 2004) (claimant deemed "substantially prevailing party" and awarded fees and costs after prevailing on

8

a motion for summary judgment); United States v. $60,201.00 U.S. Currency, 291 F. Supp. 2d 1126, 1128 (C.D.Cal. 2003) (Claimant deemed "substantially prevailing party" and awarded fees and "other expenses" after prevailing on a motion for summary judgment). CAFRA contains no language to support the argument that settling a forfeiture matter is "substantially prevailing", and to deem it as such would chill the settlement of forfeiture matters, as every settlement potentially could result in the additional award of attorneys' fees and costs.

In the present case, the settlement returned more than 50% of the seized currency to Khalil and Soliman, forfeiting $312,600 out of $660,000. See Currency I, 423 F. Supp. 2d at 17-18. Even as here, where the settlement returns more than half of the seized currency to the claimants, there is simply no basis for the Court to deem that as "substantially prevailing" under CAFRA. I decline to extend CAFRA's award of attorneys' fees and costs to include settling forfeiture actions.

Claimant was apparently aware that this Court would not extend CAFRA fees and costs recovery to settlements, which is why he dodged the CAFRA issue in his motion papers:

> Even though the underlying action is one for civil forfeiture, the general provisions of the EAJA provide the appropriate statutory basis for an award of fees here because this motion is in the nature of an action for breach of contract. See, e.g., Janus Films, [ ] 801 F.2d 578 [, 583] [(2d Cir. 1986)] ("Agreements that end lawsuits are contracts, sometimes enforceable in a subsequent suit, but in many situations enforceable by entry of a judgement in the original suit"); cf. 28 U.S.C. § 2465 (provision of . . . (CAFRA) authorizing fees awards to prevailing parties specifically in civil forfeiture cases brought after August 31, 2000). The fact that the motion to enforce the settlement is brought in the original suit does not alter its essential nature as a claim sounding in contract.

(Dkt No.41: Mem. in Supp. of Mot. to Enforce Settlement (08/30/05) at 19 (emphasis added)). Subsequently, claimant asserted a right to fees "pursuant to the EAJA and CAFRA" but, instead of fleshing out why CAFRA controlled, claimant made arguments only for fees under the EAJA. (Dkt No. 44: Reply Mem. of Law of Claimant [ ] in Further Supp. of Mot. to Enforce Settlement

9

(10/03/05) at 31; Dkt No. 48: Reply Mem. of Law of Claimant [ ] in Further Supp. of Mot. for Sanctions (10/11/05) at 1). Claimant's most recent argument to support his claim for fees under CAFRA was based on this Court's decision in Currency II, which clarified that Soliman did not receive fees because "CAFRA states that its provisions for 'reasonable attorney fees and other litigation costs reasonably incurred by the claimant' do not apply if 'the claimant is convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.'" Currency II, 429 F. Supp. 2d at 581 (citing 28 U.S.C. §§ 2465(b)(1)(A), 2465(b)(2)(B)). Claimant argues that "the Court's reasoning recognizes a legal basis for awarding CAFRA fees for litigating the enforcement proceedings, thus providing an additional basis for granting claimant fees at the CAFRA rate . . . ." (Dkt. No. 66: Reply Mem. of Law of Claimant [ ] in Further Supp. of Req. for Increase in Hourly Rate of Att'ys Fees Awarded Pursuant to 28 U.S.C. § 2412(d) (05/26/06) at 4 n.1).

In applying CAFRA to bar Soliman's recovery of fees and costs, I had no intention of indicating that attorneys' fees and costs in this case were to be given under or calculated according to CAFRA. Despite the fact that Soliman also sought fees under the EAJA using the identical breach of contract argument, I found that CAFRA clearly evinced Congress' intent that a convicted claimant could not recover in any matter related to the forfeited assets. Soliman, who was convicted of a crime for which his interest in the property was forfeited, could not recover attorneys' fees or costs in any litigation involving the currency whatsoever, regardless of the government's failure to prove it was substantially justified in disavowing the settlement agreement.

Presumably, claimant knew that his chance of prevailing under CAFRA was dubious, and, thus, his current argument that CAFRA supports an award of fees beyond the EAJA cap for this

10

"forfeiture" matter is both unconvincing and disingenuous. Claimant appropriately sought reimbursement of his fees and costs under the EAJA. I granted fees under the EAJA because this settlement agreement, despite the case's initial subject matter, was akin to enforcing a contract. See Currency I, 423 F. Supp. 2d at 34, 36-38; see also Janus Films, 801 F.2d at 583 ("Agreements that end lawsuits are contracts . . . enforceable by entry of a judgment in the original suit"). Where claimant did not "substantially prevail" under CAFRA because there is no authority to support a settlement as "prevailing", claimant was the "prevailing party" under the EAJA because the court "incorporate[d] the terms of a voluntary agreement into an order." Currency I, 423 F. Supp. 2d at 34 (citing Carbonell v. Immigration & Naturalization Serv., 429 F.3d 894, 901 (9th Cir. 2005).

### b. Enforcing a Settlement not Unique to Forfeiture Law

The legal research and analysis involved in litigating this settlement agreement were not unique to a forfeiture action. While the Court agrees that this was not a seamless case to litigate, the difficulties had little to do with the actual subject matter and everything to do with the enforcement of the settlement itself. Had claimant settled any type of case with the federal government, represented by the United States Attorney's Office, be it forfeiture, breach of contract, or even a personal injury action under the Federal Tort Claims Act, the complications of enforcing the settlement would have remained constant given the instant factual scenario. The issues of whether an Assistant or Chief could bind the federal government, either orally or in writing, and whether a partially executed stipulation qualified as a writing presented the true complications and difficulties in this matter. There was little reported case law applicable to the facts, and formulating persuasive and legally supported arguments on both sides posed difficulties that required all the skills that the excellent and experienced lawyers in this case had at their disposal.

Since fees were granted on the basis that claimant prevailed on a settlement enforcement, analogous to a breach of contract claim under Janus, no "special factor" exists. See, e.g., Olympic Marine Serv., Inc. v. United States, 792 F. Supp. 461, 469 (E.D.Va. 1992) (plaintiff prevailed on a motion to enforce a settlement and the court awarded EAJA attorneys' fees but did not award an enhancement for special factors despite "complex nature of the case and the ultimate outcome"); Prowest Diversified Inc. v. United States, 40 Fed. Cl. 879, 888-89 (Fed. Cl. 1998) (plaintiff prevailed in breach of contract claim and the court granted attorneys' fees at "an hourly rate of $129 per hour . . . the EAJA rate ($75) plus a cost of living adjustment", finding that "plaintiff's 'expertise' with construction matters and government contracts cases [was] an insufficient basis for an enhanced award"); Kunz Constr. Co., Inc. v. United States, 16 Cl. Ct. 431, 438 (Cl. Ct. 1989) (plaintiff prevailed in a breach of contract action and the court awarded attorneys' fees with an increase for cost of living only, since plaintiff had "failed to show a 'special factor' contemplated by the statute"); Keyava Constr. Co. v. United States, 15 Cl. Ct. 135, 139 (Cl. Ct. 1988) (breach of contract claim settled and plaintiff awarded attorneys' fees and expenses under the EAJA, with no special factor enhancement because "[t]he issues involved in t[he] proceeding appear[ed] to involve relatively straightforward questions of contract and regulation interpretation that d[id] not require 'distinctive knowledge or specialized skill'"). Thus, I find that claimant, prevailing on the equivalent of a breach of contract claim, is not entitled to fees in excess of the EAJA cap and, additionally, that there are no special factors warranting an increase above the EAJA cap.

For the aforementioned reasons, I decline to award attorneys' fees in excess of the EAJA cap in this forfeiture matter, as such an enhancement is only permissible when the claimant substantially prevails as per CAFRA. Claimant's right to fee reimbursement is not controlled by CAFRA and

must be assessed under the EAJA, which does not deem the practice of settlement enforcement, despite this matter's roots in forfeiture law, to be a special factor warranting a fee increase. Thus, claimant is awarded attorneys' fees at the hourly rate of $159.25 for hours billed in 2005 and $163.50 for hours billed in 2006, adjusted only for cost of living.

### B. Reasonableness of Hours Billed and Costs

The court is given "substantial discretion in fixing the amount of an EAJA award," but has a duty to ensure that the final award is reasonable. Jean, 496 U.S. at 163. The EAJA provides that attorneys for a prevailing party should be paid "for all time reasonably expended on a matter," but the EAJA should not "produce windfalls to attorneys." Hensley, 461 U.S. at 430 n.4 (internal quotation marks omitted).

The EAJA requires that claimant submit "an itemized statement . . . stating the actual time expended and the rate at which fees and other expenses are computed." 28 U.S.C. § 2412(d)(1)(B). Claimant submitted a memorandum and affidavit by his counsel Steven Kessler, which explained the time spent in this matter and appended detailed contemporaneous billing records (Dkt No. 61: Mem. of Law of Claimant Samy Khalil in Supp. of Req. for Increase in Hourly Rate of Attorneys' Fees Awarded Pursuant to 28 U.S.C. § 2412(d) (05/12/06) at 8-16; Dkt No. 62: Aff. of Steven L. Kessler ("Kessler Aff.") (05/12/06) ¶ 3, Ex. B). Approximately ninety-percent of the attorneys' fees billed on this matter were spent researching and drafting memoranda and affidavits, which this Court is clearly in a position to assess and to determine the reasonableness of the hours spent. Based on the fact-intense and drawn-out nature of this litigation, the 302.5 hours expended on motion practice, 233.85 in 2005 and 68.65 in 2006, are reasonable. The additional 37.95 hours, 12.4 spent in 2005 and 25.55 spent in 2006, on court appearances, drafting and reviewing correspondence, and

13

telephone conferences between counsel and claimant are also reasonable. Claimant's counsel expended a total of 340.45 hours on this matter, all of which the Court deems appropriate and reasonable. Additionally, claimant requests costs of $156.93 (Kessler Aff. ¶ 6, Ex. C). This request is more than reasonable in light of the fact that claimant could have requested reimbursement for Westlaw or Lexis charges. See, e.g., In re Application of Gerard Mgndichian, 312 F. Supp. 2d at 1266 (granting Westlaw charges as reasonable and recoverable costs under the EAJA (citing Jean v. Nelson, 863 F.2d 759, 778 (11th Cir. 1988); Aston v. Sec'y of Health and Human Serv., 808 F.2d 9, 12 (2d Cir. 1986))).

The government requests that the Court exclude fees related to the Motion for Sanctions. The amount of time spent on the motion for sanctions was negligible and too intertwined with other motion practice, which was necessary to further the resolution of this matter, to be isolated and deducted.[5] I will not attempt to tease-out the hours spent on the motion for sanctions. Thus, the government's motion to exclude fees spent on the motion for sanctions is denied, and claimant is awarded all of the hours billed and costs expended to enforce the settlement, which includes all fees and costs incurred in pursuit of his initial fees and costs. See Jean, 496 U.S. at 162-66.

Claimant was represented by two attorneys in this matter, Steven L. Kessler, Esq. and Eric M. Wagner, Esq. Because the EAJA fee cap has been enhanced only for cost of living, the per hour

---

[5] Claimant first moved for sanctions in his Reply Memorandum of Law in Further Support of Motion to Enforce Settlement (Dkt. No. 44: Reply Mem. (09/26/05) at 27). He moved for sanctions and for fees under the EAJA under the same point-heading. The request for sanctions was discussed in conjunction with the request for fees, and the entire section was less than four pages in an over-thirty page memorandum. Claimant's Reply Memorandum in Further Support of Motion for Sanctions (Dkt. No. 48: Reply Mem. (10/11/05)) was devoted primarily to continued argument to enforce the settlement and for an award of fees. The request for sanctions was merely the skeletal frame upon which the meat of other arguments hung.

fee for 2005 and 2006 has been applied to hours expended by both attorneys. Hence, I award the following attorneys' fees to claimant: (i) for motion practice in 2005: $37,240.62; (ii) for motion practice in 2006: $11,224.28; (iii) for all other actions taken by counsel from April 18, 2005 through years end: $1,974.70; and (iv) for all other actions taken by counsel in 2006: $4,177.43. Thus, the government is ordered to reimburse claimant for a total of $54,617.03 in attorneys' fees. Claimant is also awarded $156.93 in costs, for a total award of $54,773.96.

## **CONCLUSION**

Claimant is awarded attorneys' fees in the sum of $54,617.03 and costs in the amount of $156.93. The Court hereby ORDERS the government to pay a total award of $54,773.96 in fees and other expenses to claimant within forty-five (45) days of receipt of this Order.

**SO ORDERED.**

Dated: Brooklyn, New York
      July 13, 2006

                                      __/s/_____
                                      JOAN M. AZRACK
                                      UNITED STATES MAGISTRATE JUDGE